```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA            :

    -v.-                            :       15 Cr. 338 (PKC)

JON CRUZ,                           :

              Defendant.            :

------------------------------------------------------------x
```

# GOVERNMENT'S SENTENCING MEMORANDUM

JOON H. KIM<br>
Acting United States Attorney<br>
Southern District of New York<br>
Attorney for the United States of America

Shawn G. Crowley
Assistant United States Attorney
- Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED STATES OF AMERICA                 :

   -v.-                                          :        15 Cr. 338 (PKC)

JON CRUZ,                                 :

               Defendant.              :

------------------------------------------------------------x

## GOVERNMENT'S SENTENCING MEMORANDUM

Jon Cruz, the defendant, is scheduled to be sentenced on July 20, 2017. The Government respectfully submits this memorandum in connection with Cruz's sentencing, and in response to the defendant's sentencing submission, dated June 21, 2017 ("Def. Mem.").

## PRELIMINARY STATEMENT

Much of Cruz's sentencing submission focuses on the challenges he faced as a child, his post-arrest rehabilitation, and his accomplishments and successes as an adult. In arguing for a sentence of 60 months' imprisonment – well below the applicable Guidelines range – he claims that his "chaotic" childhood and "struggles with low self-esteem" went untreated and ultimately led to the criminal conduct underlying the charges in this case. Def. Mem. at 2-4. Cruz also points to his many accomplishments as a teacher and debate coach at the Bronx High School for Science as a factor that mitigates the seriousness of his offenses. *See id.* at 4-6.

The Government agrees that these factors—which ultimately led the Government to exercise its discretion to allow the defendant to plead to receipt of child pornography in lieu of production—merit consideration by the Court in fashioning an appropriate sentence. And for

1

many of the reasons set forth in the defendant's submission, the Government agrees that a below-Guidelines sentence would be appropriate for this defendant.

Nevertheless, the Government respectfully submits that a substantial sentence that is above the mandatory minimum term of 60 months' imprisonment should be imposed in this case. There is no doubt that Cruz faced challenging circumstances as a child. Nor is there any question that he was a popular and successful teacher at Bronx Science. But this is also true: for years, the defendant used the Internet to seek out teenage and pre-teen boys from whom he solicited child pornography. He did so, in many cases, by concealing his true identity and posing as a teenager. He used the knowledge and familiarity with children that he acquired as a teacher to flatter these boys and gain their trust. And then he paid them thousands of dollars for nude and lascivious photographs of themselves. To use and abuse the lessons learned in the classroom to control and ultimately pervert children is serious, it is harmful, and it should be justly punished. For the reasons that follow, the Government respectfully submits that a substantial sentence above the mandatory minimum term of 60 months, but below the Guidelines range of 135 to 168 months' imprisonment, is appropriate in this case.

## BACKGROUND

I.  **Offense Conduct**

   a. Background of the Investigation

In August 2014, a police department in upstate New York received a phone call from a concerned mother who reported that her son was receiving unwanted text messages on his cellphone. (Probation Department Presentence Investigative Report ("PSR") ¶ 30.) A police officer met with the woman's son ("Victim-1"), who was then 14-years-old. Victim-3 informed the officer that he had been contacted by an Internet user named "Corey Aronson," who said that

he was a teenager in New York City. Aronson continued to communicate with Victim-1 over the course of several months. He eventually began asking Victim-1 about sex, and offered to pay Victim-1 for nude photographs of himself. At least once, Aronson paid Victim-1 approximately $300 in Visa gift cards for non-nude photographs of Victim-1. (PSR ¶¶ 30-31.)

In December 2014, a police department in New Mexico received calls from concerned parents of minor teenage boys. (PSR ¶ 19.) The parents had discovered that their sons were being paid by an Internet user to send him inappropriate photographs of themselves. *Id.* The police department turned the investigation over to the Federal Bureau of Investigation ("FBI"), which met with five teenage boys in New Mexico.

The FBI learned that all of these boys had been contacted by an Internet user who identified himself as Corey Aronson. (PSR ¶¶ 19-31.) Aronson said he was a "15 or 16 years old . . . nerd" from New York City who made money at robotics conventions. (PSR ¶ 21.) Aronson explained that he had a "thing" for jocks and complimented the teens on their athletic physiques. (*See, e.g.*, PSR ¶ 21.) He then began asking them to send him photographs – including nude photographs – in exchange for cash. (*See* PSR ¶ 23.)

Over the next several months, Aronson paid the New Mexico teenagers thousands of dollars, in Visa gift cards, for photographs of the teens' feet, faces, and hands. (*See, e.g.*, PSR ¶ 28.) And he offered to pay them even more for nude photographs. Although most of the teens declined this last request, one of them ("Victim-2") agreed. Over the course of several months, Aronson paid Victim-2, a 15-year-old boy, approximately $1,600 in gift cards in exchange for photographs of Victim-2's genitalia. (PSR ¶ 26.)

The FBI soon determined that "Corey Aronson" was actually Jon Cruz, a 31-year-old teacher and debate coach at the Bronx High School for Science in New York City. Aronson was

3

a false name Cruz made up to create online profiles and communicate with minor boys all over the country. Cruz used the photograph of a former student (without the student's knowledge) as his profile picture for these accounts. And he used various online accounts to communicate with minor boys, throughout the country, for years.

      b. Cruz's Victims

The FBI investigation revealed that, for several years leading to his arrest in March 2015, Cruz, using the Corey Aronson profile as well as, at times, his own social media account and cell phone, communicated with dozens of minor teenage boys. Many of them were student athletes from high schools in rural areas. Cruz's communications with most of these children followed a similar pattern: he reached out to them and attempted to engage them in conversation. He was complimentary of their physiques and athleticism, and, over the course of weeks and sometimes months, began asking them for non-nude photographs, including photographs of the boys flexing and giving "thumbs-up selfies." Once the boys seemed comfortable with him, Cruz gradually began to talk about sexual acts the boys liked to perform and have performed on them; and then he offered to pay – and, in many cases, began paying – the boys for photographs of their genitals.

The FBI identified eight minor teenage boys from whom Cruz solicited and received nude photographs, but suspects there were more.[1] (PSR ¶ 45.) The boys were between 14- and 17-years-old. They were from New Mexico, Oklahoma, Pennsylvania, Arkansas, New York, and Indiana. They were middle school and high school athletes, whom Cruz located and contacted online. And Cruz communicated with them obsessively, often chatting with them throughout the day (while he was teaching at Bronx Science) and into the night.

---

[1] Cruz admitted that he frequently deleted the mobile application he used to communicate with most of his victims from his phone. (PSR ¶ 43.)

4

In many cases, Cruz was grooming these boys: easing them into feeling comfortable talking to him about sex, and then gradually asking them to send him pornographic images of themselves in exchange for money. Once they began sending him photographs, Cruz made sure he got his money's worth. He was very clear with the boys what he wanted them to send, and how often. For example, in October 2013, Cruz had the following exchange with one of his victims:

| CRUZ | What would I have to owe for a big series of mirror pix now, a series of pix of you hard now (including ones where you aren't holding it), a vid or two of you talking, a vid or two of you stroking? Honestly, name your price. And can we talk a bit anyway? Are we cool? |
|---|---|
| Victim-4 | You've been saying you were gonna pay for ever man and I've been sending pics and shit constantly. So I'd like to make sure your still willing to pay before more. Just to make sure |
| CRUZ | I have been very good to you with paying on time and being patient and stuff so I am not sure what you mean. I have always come through with money, and even given you more than promised sometimes. |
| CRUZ | Just saying. |
| Victim-4 | There [SENDS CHILD PORNOGRAPHY] |

Cruz was often relentless in his demands for pornographic photographs. He made clear to the boys that, to earn his money, they had to keep providing him photos. Below is an excerpt of a chat Cruz had with another victim in October 2014:

| CRUZ | Please keep sending; I waited all day yesterday and today for these. I am now out on a date so I cannot send the card; I did not want to get it until I received this stuff since the last few times I have paid, you dropped off for a while. I will get you your card, but keep sending. I may have to send it early in the morning. Keep them coming, please. Thanks. |
|---|---|
| CRUZ | Really send an incredible set tonight. To be honest, I am giving you a lot, and you know that, and I have been really patient with stuff, so please go nuts with this. I will be quiet for a while. |
| Victim-3 | [SENDS FIVE IMAGES CONTAINING CHILD PORNOGRAPHY] |
| Victim-3 | I hope these 5 can hold up over until later. . . . |

| CRUZ | I cannot text for a while but please keep going; very intense stuff. Bare feet, too, maybe both bare feet and face as well as bare feet and hard. I will text back later. |

Moreover, the defendant, who was well aware that his victims were minors, took steps to conceal his illegal conduct. In addition to lying about his own identity and age, Cruz paid the boys using gift cards that he purchased online and from different stores in New York. (*See, e.g.*, PSR ¶¶ 25, 29-30, 41.) He sent the boys the activation codes for the gift cards so they could use the money. (*See, e.g.*, PSR ¶ 29.) As he explained to another victim in July 2011, he did so because he believed that this payment system would not be traced back to him:

| CRUZ | Cool. I am slightly concerned about using my credit card directly to buy you stuff before you turn 18, so it might make more sense to buy you gift cards, and then you buy stuff, or for me to send you cash. When is your birthday btw? You're 16 or 17? |
| CRUZ | Do you mind that I just want to be safe with that? I am sure you understand. If we want this to be very long-term we have to be d/l with certain things at certain times, you know? |
| Victim-5 | [Indicates that he is 17 years old] |
| CRUZ | So you would have been cool having a relationship like this when you were 14? You had said when you were a freshman. Just curious. I only regret we didn't start earlier, you know? lol |

In addition to soliciting pornographic images, Cruz frequently chatted with the boys about their own sex lives. He asked them to describe the types of sexual acts they liked to have performed on them. He even encouraged some of them to find a "nerdy slave" – a boy the defendant apparently considered to be like himself – and to use the slave to do the boys' homework, give the boys gifts, and, in some cases, perform sexual acts on them. In at least one ongoing chat conversation, Cruz continuously encouraged a victim to beat up and "enslave" another student at the victim's school who had Asperger's syndrome (the "Student"). The defendant encouraged the victim to force the Student to perform oral sex on the victim, and, after he did, to describe it to the defendant. Below is an excerpt of one such communication, which occurred on October 24, 2013:

6

| CRUZ | Please keep sending pix and vids and stuff. You are so cocky and it's awesome. Is $2K a good amount for me to offer for your patience? haha |
|---|---|
| Victim-4 | Yeah 2k will work lol. I'm gonna go ahead and get the pics and stuff! Then I'm prolly gonna head to bed |
| CRUZ | Take a ton of pix and vids now. Really go all out with what you show. No holding back. And then let's talk for 15 minutes after and you can go to bed. I know you are tired. But i have some stuff to ask. Is that fair [Victim-4]? Are we cool? :) Glad we are talking again? |
| CRUZ | 😄 |
| Victim-4 | Still waiting on my lil bro☹ |
| CRUZ | Okay, hopefully he will be out soon |
| CRUZ | In the meantime can you tell me what your interactions with each slave are like generally? Like how do the talks go down? I just have to admit I am turned on just thinking about it haha |
| Victim-4 | Pretty much I just say sup bitch give me my shit and get my work and if he doesn't have it I'll punch him or some shit and tell him to fuckib get it |
| CRUZ | I will literally pay for a long description of the blowjobs with [the Student] I admit I feel like it's going to happen soon with [Victim-4] |

Cruz appears to have been encouraging the boys to play out his own sexual fantasies. *See* Def. Mem. Ex. I (Cruz Letter to Court), at 3-4.

    c. <u>Cruz's Arrest</u>

On March 4, 2015, the FBI executed a search warrant on Cruz's apartment in New York City. The FBI located dozens of photographs of minor teenage boys posing nude on Cruz's electronic devices. (PSR ¶ 42.) On Cruz's mobile phones, FBI agents found photographs of minor boys giving "thumbs up selfies" and others with boys wearing only their underwear and pointing to their crotches. *Id.* In addition, the agents found Visa gift cards – the same kind the defendant used to pay his victims – in Cruz's apartment. *Id.*

During the execution of the warrant, Cruz waived his *Miranda* rights and agreed to speak with the FBI agents. Cruz admitted that he had been chatting with minor teenage boys over the Internet and by text message for several years. (PSR ¶ 43. He said he knew the boys were under

7

eighteen. He admitted that he made up the name "Corey Aronson" and used the photograph of a former student (who had graduated the year before) to set up the Aronson online account. Cruz told the agents that, although he never solicited nude photographs from his own students, he did give one student a gift in exchange for non-nude photographs of that student. *Id.*

## II. The Defendant's Plea and Applicable Guidelines Range

On September 23, 2016, the defendant pleaded guilty, pursuant to a plea agreement with the Government, to Count Two of the Indictment, which charged him with receiving child pornography, in or about December 2014, in violation of Title 18, United States Code, Section 2252A(a)(2)(B). (PSR ¶ 13.)

Under the terms of the plea agreement, and as calculated by the Probation Department, the defendant's sentencing Guidelines are 135 to 168 months' imprisonment, with a mandatory minimum prison term of 60 months (the "Stipulated Guidelines Range").[2] (PSR ¶¶ 3, 14, 117.) The Stipulated Guidelines Range was based on an offense level of 32, pursuant to Section 2G2.1(a) of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), with the following enhancements:

- Pursuant to U.S.S.G. § 2G2.1(b)(1), because the offense involved a minor who had attained the age of twelve but not sixteen, the base offense level was increased by two levels.

- Pursuant to U.S.S.G. § 2G2.2(b)(6)(A), because the defendant misrepresented his identity to induce a minor to engage in sexually explicit conduct, the base offense level was increased by two levels.

The total offense level of 36 was then reduced by three levels because the defendant accepted responsibility for his crimes and provided timely notice of his intention to plead guilty to the Government. (PSR ¶ 14.)

---

[2] In addition, and under the terms of the Plea Agreement, the defendant agreed to make a total payment of $12,200 to the victims of his offense. (PSR ¶¶ 14, 127.) A proposed order of restitution is attached hereto.

Because the defendant has no criminal history points, his total offense level is 33, which results in a Guidelines range of 135 and 168 months' imprisonment. (PSR ¶ 117.) The Probation Department recommends a sentence of 135 months. (PSR at 26.) The defendant seeks a sentence of the mandatory minimum 60 months in prison. For the reasons set forth below, the Government respectfully submits that a substantial sentence below the Stipulated Guidelines Range but above the mandatory minimum is appropriate in this case.

### III. Victim Impact Statements

The Government has received victim impact statements from one of the boys from whom Cruz solicited and received child pornography, as well as four parents of other victims, all of which speak to the traumatic and enduring impact of Cruz's conduct on his victims. The minor victim writes that he felt "used and treated like a puppet," and complains that he "lost the trust of [his] parents" after they discovered what had happened. He says that he "sometimes [wasn't] able to sleep just thinking about why [he] fell for the trick . . . thinking of what everyone would think about [him]" if they found out.

A mother of one of Cruz's victims writes: "I was greatly impacted by this event that happened with my son. He was tricked and used. I was greatly impacted because it made me feel worthless in protecting my son." Another parent writes: "In December of 2013 we discovered our 14 year old son was being targeted by a sexual predator. What started as our son believing he was being compensated for 'modeling' pictures turned into explicit nude pictures being sent over the Internet . . . . As you can imagine our anger and utter devastation over this as parents . . . . Shortly after this was discovered our son became very angry and depressed. He started to act out at home and in school." And another mother writes: "[m]y dear, sweet son has had tremendous difficulty talking to me about what happened . . . . My son did say he thought he was contacted by another

9

teen-aged boy. Not in my son's wildest dreams did he imagine that he was being contacted by an adult. . . ."

## DISCUSSION

I.  **The Defendant's Conduct Is Extremely Serious**

As noted, the Government does not oppose the imposition of a sentence below the Stipulated Guidelines Range, but believes that a sentence higher than the five-year mandatory minimum is necessary to reflect the seriousness of the defendant's conduct and to promote respect for the law. The Government acknowledges that, as set forth in the defendant's sentencing submission, the defendant's history and characteristics, as well as his post-arrest rehabilitation efforts, are significant mitigating factors. However, the breadth of the defendant's conduct, including the lengths to which the defendant went to conceal it, warrant a substantial sentence exceeding the mandatory minimum term of incarceration.

There is no question or debate about the seriousness of child pornography offenses, and the Government will not here belabor the fact that such conduct shocks the conscience. *See*, *e.g.*, *New York* v. *Ferber*, 458 U.S. 747, 757 (1982) ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."). The defendant's conduct – as in all cases involving the possession, receipt, or production of child pornography – harmed children. And, contrary to the suggestions in the defendant's submission, it does not matter their age (*see* Def. Mem. at 7), it does not matter their sexual orientation, athleticism, or popularity (*see* Def. Mem. Ex. I (Cruz Letter to Court), at 5), and it does not matter that they made money from their interactions with the defendant. They were lied to, manipulated, and, ultimately, persuaded to take deeply private photographs of themselves and send them to a complete stranger. Cruz's conduct was serious, it was long-running and wide-ranging, and it was harmful. *See United*

*States* v. *Reingold*, 731 F.3d 204, 216 (2d Cir. 2013) ("As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children."). Indeed, it is precisely because "[c]hild pornography harms and debases the most defenseless of our citizens" that "[b]oth the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States* v. *Williams*, 553 U.S. 285, 307 (2008).

The defendant contends, however, that he is unlike "most other" child pornography defendants, and he should therefore receive the most lenient sentence available under the law. *See, e.g.*, Def. Mem. at 17. Cruz notes that he did not download commercial child pornography from the Internet; nor did he sell, trade or share pornographic photographs or have sexual contact with minors, as is the case with other child pornography defendants. Def. Mem. at 7, 18. It is true that, as far as the Government is aware, the defendant did not engage in this conduct. But there are other factors that make this more serious than "most other" child pornography cases.

Unlike many cases in which defendants are convicted of receipt, Cruz did not merely possess or passively receive images containing child pornography from other Internet users or anonymous individuals in a chatroom. He actively sought out children – often from low-income, economically disadvantaged communities – gained their trust, and paid them for pornographic photographs of themselves. In at least one case, he encouraged a boy to bully and abuse another child, all for his own enjoyment.[3] He concealed his identity and posed as a teenager because he believed the boys would be more likely to continue chatting with a teenager than an adult. (PSR ¶ 43.) And he used the photograph of a former student, without that student's knowledge or

---

[3] The boy with whom Cruz communicated denied ever actually bullying or abusing another child.

11

permission, to create the fake profile he used to find and lure in his victims.[4] The seriousness of Cruz's conduct, the harm he caused, and the steps he took to evade detection warrant a substantial sentence.

Nor is the defendant's success as a teacher an entirely mitigating factor, as he appears to suggest. *See* Def. Mem. at 4-6. On the one hand, and as detailed in the defendant's submission, there is no doubt that the defendant was a remarkable teacher who had a positive impact on many of his students. He was devoted to the debate team and to the students on it, and was able to bestow in them confidence and self-esteem that, in many ways, he himself did not seem to possess. On the other hand, the close, trusting relationships Cruz had with his students – including many who "confided in him" – did not stop him from targeting and manipulating teenagers who were not his students (and likely did not have the "understanding, non-judgmental ear" he provided members of his debate team). *Id.* To the contrary, Cruz appears to have used these relationships to perpetuate his own crimes. His closeness and familiarity with teenagers provided him with an understanding of their psyche that eludes most adults, allowing him greater access to their online world. Cruz learned to speak the teenagers' language, understand and manipulate their vulnerabilities, and ascertain methods for communicating with and preying on them. He turned a seemingly stellar ability to relate to and guide students into a toxic ability to charm and ensnare others. There is no net gain here, but rather a perversion of the sacred trust between teacher and

---

[4] The former student first learned that Cruz had used his photograph to perpetuate his crimes in an interview with the FBI the day Cruz was arrested in March 2015. The student, who had graduated from Bronx Science the year before, had remained in touch with Cruz until his arrest. Upon learning that Cruz had used his photograph, the student reported feeling shocked and betrayed. Cruz acknowledges the harm he caused his former student in his letter to the Court: "In many ways, I was [the former student's] mentor and his confidante, helping him through the many obstacles of teenage life. . . . It pains me tremendously to imagine how deeply betrayed he must feel that I used his picture and to know that he must constantly question whether my entire association with him was some kind of sham." Def. Mem. Ex. I (Cruz Letter to Court), at 2.

12

student. Moreover, and as noted, while Cruz certainly mentored and nurtured Bronx Science students he considered (and called) "nerdy," he also encouraged at least some of his victims to target that same type of individual and treat them as "slaves."[5] Teachers are, and should be, entrusted to protect our children. In many ways, Cruz did just the opposite.

**II.     The Defendant's Arguments for the Minimum Sentence Are Unpersuasive**

In his submission, the defendant asks this Court to impose the mandatory minimum sentence of 60 months in prison. In seeking this sentence—which is more than sixty percent lower than the bottom of the Guidelines range—Cruz encourages the Court to consider several mitigating factors, including his difficult childhood; his post-offense rehabilitation; his low risk of recidivism; and the need to prevent unwarranted disparities in sentencing. While the Government agrees that these factors render a below-Guidelines sentence appropriate, they do not compel the minimum sentence the defendant seeks.

*First,* the defendant points to the difficult circumstances of his upbringing – ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ – as factors that mitigate the seriousness of his conduct. Def. Mem. at 3. The Government is certainly sympathetic to these arguments; indeed, these factors weighed heavily in the Government's decision to permit the defendant to plead guilty only to receipt of child pornography, which carries a five-year mandatory minimum term of imprisonment, instead of production of child pornography, which carries a mandatory minimum sentence of fifteen years.

---

[5] The defendant claims that "slavery" was just a fantasy, and that he actually did not intend for the boys with whom he chatted to carry out his directives. (PSR at 24.) It may well be that Cruz did not, in fact, want his victims to target and "enslave" "nerdy" boys at their own schools. But what Cruz may have been thinking in his own mind is irrelevant, particularly because he did not share with his victims that he considered slavery to be a fantasy they should not in fact carry out.

13

The Government has also considered these factors in recommending a sentence below the Stipulated Guidelines Range as fair and appropriate in this case.

Nevertheless, the circumstances of the defendant's upbringing do not excuse his criminal conduct. Nor can it be overlooked that the defendant, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, often preyed on boys who struggled with difficult circumstances of their own. As noted, most of Cruz's victims were from rural, impoverished communities. They were kids the defendant knew needed money and, in many cases, they made clear they would do anything to get it. And some of Cruz's victims were struggling with their own sexual preferences and orientation – the very same struggle the defendant himself faced as a child, which he says was a contributing factor to his conduct in this case. Cruz suggests that his own difficult childhood compels the Court's leniency in this case. But the difficulties his victims faced did not stop Cruz from targeting them. Indeed, it was likely *because* of their vulnerabilities that the defendant sought them out in the first place—and, ultimately, inflicted enduring harm on them.

*Second*, the defendant asserts that imposition of the mandatory minimum sentence of 60 months is necessary to avoid unwarranted disparities in sentencing among similarly situated defendants. Def. Mem at 17. The defendant first argues that application of U.S.S.G. § 2G2.2(c), which applies in all child pornography cases in which a defendant "caused . . . a minor to engage in sexually explicit conduct," results in a Guidelines range that overstates his conduct, which did not involve physical contact with a minor. Def. Mem. at 17-19. The defendant then contends that his case is most analogous to *United States* v. *Anthony Weiner*, 17 Cr. 307 (DLC), in which the defendant pled guilty to one count of transferring obscene material to a minor, in violation Title 18, United States Code, Section 1470. Def. Mem. at 19-20. The defendant's first argument is overly simple; the second is incorrect.

14

As an initial matter, the Government agrees that a sentence below the Stipulated Guidelines Range is appropriate in this case. But that does not mean that the Guidelines – and the cross-reference in U.S.S.G. § 2G2.2(c) in particular – should be disregarded entirely, as the defendant appears to suggest.[6] Indeed, the Guidelines are the "starting point and the initial benchmark" in sentencing proceedings, *Gall* v. *United States*, 552 U.S. 38, 39 (2007), before the Court considers the factors outlined in Title 18, United States Code, Section 3553(a). And, while it is true that Cruz did not have sexual contact with a minor (*see* Def. Mem. at 19), there are other factors that make his conduct more serious than a "run-of-the-mill" case involving receipt. *United States* v. *Dorvee*, 616 F.3d 174, 186 (2d Cir. 2010). The defendant did not simply possess child pornography—he sought it out, actively solicited it from the children themselves, and paid large sums of money to ensure its steady supply.[7]

Finally, Cruz's argument that his case is most analogous to *United States* v. *Weiner* should be rejected outright. The defendant in that case has not yet been sentenced, and Cruz's arguments concerning the circumstances underlying Weiner's plea agreement appear to be based entirely on his own speculation. Moreover, even under Cruz's version of the facts at issue in *Weiner* (*see* Def.

---

[6] The defendant cannot, and did not, make this argument directly, as doing so would be in breach of his plea agreement with the Government, in which he stipulated that U.S.S.G. § 2G2.2 is applicable to his conduct and the Guidelines range of 135 to 168 months' imprisonment was correctly calculated.

[7] Moreover, the Second Circuit has affirmed multiple Guidelines sentences based on case-specific considerations, including in cases, like this one, that did not involve physical contact with a child. *See, e.g.*, *United States* v. *Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming 120-month sentence for receipt, distribution, and possession of child pornography, where there was no evidence that the defendant had had inappropriate contact with a child or had distributed child pornography); *United States* v. *Magner*, 455 F. App'x 131, 134-35 (2d Cir. 2012) (affirming 108-month sentence in similar circumstances); *United States* v. *Aumais*, 656 F.3d 147, 157 (2d Cir. 2011) (affirming 121-month sentence for possessing and transporting child pornography given, among other things, "the violent nature of the images" and "the number of them").

15

Mem. at 19-20), as well as that which is currently in the public record, that case can be easily distinguished from this one. Weiner admitted to engaging in sexually explicit Internet communications with one minor teenager; Cruz had at least eight victims, and, by his own admission, likely many more. Weiner pled guilty to transferring obscene material to a minor, an offense with no mandatory minimum; Cruz pled guilty to receiving child pornography, an offense that carries a mandatory minimum sentence of five years. There is no allegation that Weiner hid his true identity; Cruz went to great lengths to conceal who he was and why he was soliciting child pornography. And, while Weiner is not alleged to have sought out his minor victim, Cruz actively and persistently targeted the boys with whom he communicated, even asking some of them to refer him to their friends. While both cases involve indisputably serious, harmful conduct, the scope and depth of Cruz's crimes—involving multiple victims over many years—makes the defendant's comparison to the *Weiner* case entirely inappropriate.

\* \* \*

Taken together, the defendant's arguments in mitigation do not warrant the minimum sentence he seeks. Such a sentence would not reflect the seriousness of his crime or the need to provide just punishment for that offense. Nevertheless, the Government submits that consideration of the factors set forth in 18 U.S.C. § 3553(a) supports a sentence below the Stipulated Guidelines Range. In addition to Cruz's personal history and characteristics, including his troubled childhood, the defendant has never had sexual contact with a minor; has accepted responsibility, expressed remorse, and undergone substantial rehabilitation; and seems to present a low risk of recidivism.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that a substantial sentence below the Stipulated Guidelines Range of 135 months to 168 months' imprisonment, but above the mandatory minimum sentence of 60 months' imprisonment, would be fair and appropriate, and would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing in this case.

Dated: New York, New York
       July 6, 2017

                                      Respectfully submitted,

                                      JOON H. KIM
                                      Acting United States Attorney

                    By:   /s/
                         Shawn G. Crowley
                         Assistant United States Attorney
                         Southern District of New York
                         (212) 637-1034

cc: Steve Zissou, Esq.